## Hughes, to Use, &c., *versus* Torrence with Notice to *terre tenants*.

1. Where a *scire facias* to revive a judgment is issued within five years from the rendition thereof, against the defendant therein only, and after due service judgment is entered against him, the issuing of an *alias scire facias* and service thereof on the *terre tenant* within five years from issuance of the original *scire facias* operates to revive and continue the lien of the original judgment against such *terre tenant*.

2. Where a mortgagee satisfies his mortgage and admits that the debt is paid, leaving the bond secured by the mortgage unsatisfied, there being in fact a balance of the debt secured thereby unpaid, and he afterwards assigns the judgment entered on said bond to the wife of the defendant, she or her legal representatives will be entitled to participate in the distribution of the fund, arising from an assignee's sale of real estate, purchased by her at said sale, upon which this judgment was a lien, although she had united with her husband in a general warrantee deed in fee simple for said land to the party as whose property it was sold by the assignee, it not appearing that any one in interest acted upon the said admission of the mortgagee.

3. Porter *v.* Hitchcock, 2 Out., 625, followed.

February 1st, 1886.    Before MERCUR, C. J., GORDON PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Fayette county:* Of July Term, 1885, No. 33.

This was a *scire facias* by Edward J. Hughes for the use of Mackintosh, Hemphill & Co. against George A. Torrence, issued April 5th, 1880, to revive a judgment against him, entered on April 26th, 1875.    Judgment was regularly entered against the defendant May 3d, 1880.    On April 27th, 1882, an *alias scire facias* was issued and served on Joseph Johnston, as *terre tenant*, and his assignees, he having made an assignment for the benefit of his creditors.    On June 16th, 1882, judgment *de terris* was entered against Johnston and his assignee, *terre tenants* of lands of Torrence, for want of a plea.

The court afterward opened this judgment.    Johnston's assignee pleaded no lien, payment, and payment with leave. On this issue the parties agreed to the facts and filed the following:

And now, December, 1884, it is hereby agreed by the parties to the above suit, that the following case be stated for the opinion of the court:

In April, 1875, George A. Torrence, the defendant above named, borrowed from Mackintosh, Hemphill & Co., of Pittsburgh, Pennsylvania, through the agency of Edward I. Hughes,

[Hughes *v.* Torrence.]

the plaintiff above named, the sum of $13,000, and gave as security therefor his judgment bond dated and executed on the 22d day of April, 1875, and a mortgage dated April 22d, 1875, acknowledged April 23d, 1875, and recorded April 23d, 1875, in the Recorder's Office of Fayette county, Mortgage book 2, p. 381. The mortgage covered a farm owned by the said Torrence in Dunbar township, in said county. The bond was entered of record in Fayette county aforesaid, on April 26th, 1875, at 327, June Term, 1875, in the Common Pleas of said county.

Beside the said farm, so mortgaged as aforesaid, the said defendant owned certain other real estate in said township.

When the said mortgage debt became due, execution to collect it was issued on the judgment, entered on said bond aforesaid. Under this execution the mortgaged farm was sold by the sheriff, and purchased by Mackintosh, Hemphill & Co., on the 6th day of September, 1876, for about $4,600. *Alias* execution was issued on the judgment and about $6,500 realized out of other real estate of the said George A. Torrence, making about $11,000 in all produced by execution and applicable to the said debt of $13,000 due the said Mackintosh, Hemphill & Co. Some time after the purchase of the said farm by the said Mackintosh, Hemphill & Co., and after the said additional sum of $6,500 had been realized by them from the sale of defendant's other land aforesaid, the price of real estate in Fayette county advanced, and Mackintosh, Hemphill & Co. sold the said mortgaged farm which they had bought for $4,600 to some eastern parties for about $40,000.

The said Mackintosh, Hemphill & Co. were so well satisfied with the said amount of $40,000 realized by them out of the said mortgaged farm, besides the said $6,500 realized from defendant's other lands, that they declared their purpose not to collect the balance of their debt, viz: the $2,000 aforesaid, and were willing to satisfy the said judgment. They did not satisfy the said judgment of record, but at the solicitation of the said George A. Torrence, without any consideration whatever, they wrote the letter dated Pittsburgh, February 21st, 1880, to Mr. Lindsey, their attorney in Uniontown, which letter was mailed in Pittsburgh on the said 21st day of February, 1880, and received by Mr. Lindsey in due course on the same or the next day. The said letter and envelope are hereby made a part of this case stated.

Pittsburgh, February 21st, 1880.

R. H. Lindsey, Esq., Uniontown, Pa.

Dear Sir:—We enclose you the power of attorney required by that "Phila. lawyer," which we hope will quiet his slumbers.

[Hughes v. Torrence.]

George A. Torrence wants us to assign the unsatisfied remainder of our judgment to his son. What in the world good this will do him we don't know nor care, and are quite willing to do so, except as far as the Boyce judgment is concerned, as we paid for that, we want to get it if getable. Will you please look into it and prepare the proper papers for us to execute.

Yours truly,

MACKINTOSH, HEMPHILL & CO.

On the said 21st day of February, 1880, examinations of the title and records were being made by the eastern parties, preparatory to the purchase of the said mortgaged farm from the said Mackintosh, Hemphill & Co. At that time the said mortgage stood open on the records. The attorney of the purchasers wanted to have it satisfied to perfect the title; that fact was communicated to Mackintosh, Hemphill & Co. by Mr. Lindsey, and the said M. H. & Co. forwarded to him the power of attorney, authorizing the Recorder of Deeds to satisfy the said mortgage, a copy of which is hereto attached and made a part of this case stated. The said power of attorney has no date in the body, but was acknowledged before an alderman in Pittsburgh, on the 21st day of February, 1880, and was recorded in Fayette county on the 23d of February, 1880.

George A. Torrence to E. I. Hughes, now for use of Mackintosh, Hemphill & Co. Art. of Ag. Book 4, p. 13. Mortgage dated April 23d, 1875, upon 207 acres of land in Dunbar Township, Fayette county, to secure thirteen thousand dollars, with interest from April 23d, 1875.

Recorded in Fayette County, Pennsylvania, on the 23d day of April, 1875, in Mortgage Book No. 2, at page 381.

We do hereby authorize and empower the Recorder of Deeds of Fayette County, in the State of Pennsylvania, for us and in our name and stead, to enter satisfaction upon the mortgage of the record of the above stated mortgage, the debt thereby secured having been fully paid, and for so doing this shall be his sufficient warrant.

WITNESS our hand and seal this      day of February, Anno Domini one thousand eight hundred and eighty.

On the same day, in pursuance thereof, Mr. Darby, the Recorder of Fayette county, entered satisfaction of the said mortgage on the record.

Mr. Lindsey says that he talked to his clients, Mackintosh, Hemphill & Co., about the balance of $2,000, or thereabouts, still appearing to be due at the time of the sale of the said farm on the said debt of $13,000, and that the said M. H. & Co. said they cared nothing about the matter, that they had

made enough money out of the transaction without the balance of the judgment, and that it might be satisfied.

On the 24th day of February, 1880, at the request of George A. Torrence's attorney, by virtue of the said letter of the said Mackintosh, Hemphill & Co.. to him, dated February 21st, 1880, and of the execution of authority therein conferred, Mr. Lindsey, as Mackintosh, Hemphill & Co.'s attorney, assigned in the record without any consideration whatever, the unpaid balance of the said judgment to Maria M. Torrence, wife of the said George A. Torrence.

Maria M. Torrence issued a *scire facias* on this judgment, No. and Term of the case now in hearing, on the 5th of April, 1880, being within five years of its date, in the name of the original plaintiff, Edward I. Hughes, to revive and continue the liens thereof on all lands originally bound by it.

On the 15th day of July, 1875, George A. Torrence and the said Maria M., his wife, conveyed to Joseph Johnston, by duly acknowledged deed, containing clause of general warranty, the east half of lot No. 91 in the old town in New Haven, in said county, on which was erected the Claney House, together with certain other real estate, for a full money consideration, which was paid to the said George by the said Joseph Johnston; and by the other deed, dated July 16th, 1875, recorded in Deed Book 29, p. 482, the said George A. Torrence and Maria M., his wife, conveyed to said Joseph Johnston, for a valuable and full consideration, a piece of land in Dunbar Township, in the said county of Fayette—which said deed contained a clause of general warranty.

This property the said George A. Torrence owned on the 26th of April, 1875, at the time of the entry of the said judgment in favor of the said Mackintosh, Hemphill & Co. for $13,000, and that judgment was the first lien on it.

The said George A. Torrence and Joseph Johnston had been for a long time before the 15th day of July, 1875, partners in the banking business in Connellsville, in the said county. The said Torrence, finding himself deeply in debt, both in the said banking business and outside of it, on or about the said 15th day of July, 1875, made conveyances of large amounts of valuable land to the said Joseph Johnston, not including the said Claney lot, not under any assignment or insolvent laws, but by private agreement, the said Joseph Johnston to dispose of the same to the best possible advantage, and pay all of the indebtedness of the said George A. Torrence, if money enough should be realized therefrom to do so. If any surplus remained after paying all of the said debts, and the expense of said proceeding, the said surplus was to be returned by the said Joseph Johnston to the said

[Hughes v. Torrence.]

George A. Torrence. The said Joseph Johnston accepted the said trust, but there existed large indebtedness of George A. Torrence of record and liens on the property conveyed at the time of the conveyance by Torrence to Johnston, for the payment of which, all the property so conveyed was subsequently sold by execution, Johnston did not attempt the execution of said trust, but on the 21st day of October, 1875, made an assignment under the state insolvent laws for the benefit of his creditors of his entire personal and real estate to Josiah Kurtz and to others, of whom Josiah Kurtz alone entered actively upon his duties as said assignee.

In the said assignment for the benefit of his creditors, the said Joseph Johnston included the entire property so as aforesaid conveyed to him by the said George A. Torrence in July, 1875, for the purpose of paying the said George's debts, setting forth in his said assignment the said conveyance to him by the said George, with all the conditions in full, as conveyed to him.

The said Josiah Kurtz accepted the duties of the said assignment for the benefit of Joseph Johnston's creditors, but never attempted the execution of the duties of the said George A. Torrence, but nearly the entire indebtedness of Joseph Johnston, to which the fund in court would be applicable if answered to the assignees of Joseph Johnston, were debts of the partnership of George A. Torrence & Co., composed of said George A. Torrence and Joseph Johnston. On the 16th day of June, 1876, the said Josiah Kurtz, assignee of the said Joseph Johnston, obtained an order of the Court of Common Pleas, pursuant to the Act of Assembly of 1876, *Purd. Dig.* 1973, to sell certain real estate of the said Joseph Johnston, including the Claney House, and the Dunbar township land, and under the said order sold the said Claney House as the property of the said Joseph Johnston to Maria M. Torrence, for the sum of $1.030, the said piece of land in Dunbar township, containing twelve acres, more or less, to John T. Hogg for $1,300, and the disposition of the money from the sale of the Claney lot raises the question in this case, that is to say, as to whether this judgment shall be revived as against the said Claney lot.

The *scire.facias* on the Hughes' judgment was issued at the instance of Maria M. Torrence on the 5th of April, 1880 ; judgment was confessed by George A. Torrence May 3d, 1880, and was regularly taken, *de terris*, after personal service by default against both Joseph Johnston and Josiah Kurtz, his assignee, denominated *terre tenants.*

The judgment against Johnston and Kurtz is dated June 16th, 1882, and was obtained on an *alias sci. fa.* issued April 27th, 1882.

[Hughes *v.* Torrence.]

Joseph Johnston had been in possession of the Claney lot from the 15th of July, 1875, when it was conveyed to him by Torrence and wife, until October 21st, 1875, when he conveyed it to his assignees, after which date it was in possession of the said Josiah Kurtz until he sold as aforesaid.

Josiah Kurtz, as assignee of the said Joseph Johnston, filed an account in court showing in his hands a portion of the purchase money of the said Claney House, sold as aforesaid by the said Kurtz, under the order of this court, June 16th, 1876. An Auditor was appointed to ascertain liens, etc., and Maria M. Torrence appeared before him to claim the entire amount of the said Claney House money; the Auditor rejected the claim of Mrs. Torrence, but the court reversed the decision of the Auditor on the ground that the said judgment now in controversy having been revived and standing in full force at the time of the proceedings before the Auditor, and being the first lien on the said Claney House, Mrs. Maria M. Torrence was, according to the record, entitled to the said Claney House money, but the court also stayed all proceedings in the distribution of the said Claney House money until an application could be made to the court to open the said judgment and ascertain if a valid defence to it could be made; whereupon on the 12th day of May, 1884, the said Kurtz presented his petition to this court (which is hereby made a part of this case stated, and the facts in which said petition are not denied,) to open the said judgment as to the said Johnston and Kurtz, and allow them to make a defence on the ground set forth therein.

The prayer of this petition was granted on the 26th day of August, 1884, and the case was ordered to be placed on the trial list for this (December) term.

Maria M. Torrence died during this progress of the said hereinbefore recited proceedings, and Alfred C. Knox, her administrator, has been substituted on this record as plaintiff.

If the court shall be of opinion that the plaintiff, Alfred C. Knox, administrator of Maria M. Torrence, deceased, is entitled to recover in the action, and to have said judgment revived as against Joseph Johnston and Josiah Kurtz, his assignee, as aforesaid, *terre tenants* of the real estate so conveyed as aforesaid by the said George A. Torrence and wife to the said Joseph Johnston, to wit, the east half of lot No. 91 in New Haven, known as the Claney lot, then judgment *de terris* to be entered in favor of said plaintiff against said *terre tenants* for the sum of $2,000, with interest from May 3d, 1880, but if said plaintiff is not entitled to have said judgment revived as aforesaid, then judgment to be entered in favor of *terre tenants*, the costs to follow this judgment, and either party to have the right to sue out a writ of error thereon.

The court entered the following judgment: Upon consid eration of the facts as presented by the case stated and an examination of the authorities, we are of the opinion that the plaintiff, Alfred C. Knox, administrator of Maria M. Torrence, deceased, is not entitled to recover in this action and to have said judgment revived as against Joseph Johnston and Josiah Kurtz, his assignee, *terre tenants* of the real estate, conveyed by the said George A. Torrence and wife to said Joseph Johnston, to wit, the east half of lot No. 91 in New Haven, known as the Claney lot; and it is therefore ordered and directed that judgment be entered on the case stated in favor of Joseph Johnston and Josiah Kurtz, his assignee, *terre tenants* with costs.

The plaintiff thereupon took this writ, and assigned for error the entering of the judgment.

*Edward Campbell*, for plaintiff in error.

*Boyle & Mestrezat*, for defendant in error.

Mr. Justice STERRETT delivered the opinion of the court, February 15th, 1886.

To warrant the entry of judgment in favor of plaintiff, it is of course necessary that at least a portion of the original judgment, on which the *scire facias* issued, should appear to be unpaid. The words contained in the entry of satisfaction on the mortgage record, viz., " The debt thereby secured having been fully paid," amount to an admission that the judgment, in which the debt was merged, had theretofore been paid, and in the absence of evidence to the contrary would be conclusive of the fact; but the facts and circumstances connected with the satisfaction of the mortgage clearly show that such was not the case; that $2,000 of the debt evidenced by the bond on which the original judgment was entered remains unpaid. Indeed that fact is distinctly admitted by the case stated, and must therefore be accepted as true; and there is nothing in the case stated that would have the effect of estopping either the legal or equitable plaintiffs from claiming the balance thus admitted to be due. If Mackintosh, Hemphill & Co. had not assigned the judgment to Mrs. Torrence, they would have had a right, for aught that appears, to collect the unpaid balance. It does not appear that any one acted on their admission, above referred to, that the debt was fully paid, and, nothing having been done to estop them from collecting the admitted balance, they had a right to assign the same to Mrs. Torrence, either for value or as a gift, and thus invest her with all their right, title and interest therein. The fact that she previously

united with her husband in the deed conveying the land in question to Johnston could not estop her from enforcing the lien of the judgment in the same manner that her assignors could have done. She is not in any way affected by her husband's warranty against incumbrances, etc. It follows, therefore, that there is nothing to prevent her administrator from enforcing payment of the admitted balance of the judgment against the land originally bound by the lien thereof in the hands of the *terre tenants*, unless the lien as to them has been permitted to expire for want of proper steps being taken to keep the same alive. This brings us to the only remaining question in the case, viz.: Whether the proceedings in this *scire facias* to revive the original judgment, etc., have had the effect of continuing the lien thereof against the land in the hands of the *terre tenants?* In view of repeated decisions of this court this should no longer be an open question. In Porter *v.* Hitchcock, 98 Pa. St., 625, it was distinctly ruled, as in effect it had theretofore been, that where a *scire facias* to revive a judgment is issued, within five years from the rendition thereof, against the defendant therein only, and after due service judgment is entered against him (as was done in this case), the issuing of an *alias scire facias* and service thereof on the *terre tenant*, within five years from issuance of the original *scire facias* operates to revive and continue the lien of the original judgment against such *terre tenant*. The facts of that case were, in effect, the same as in the case at bar. In 1876 the *terre tenant* bought property encumbered by the lien of a judgment entered in 1875, recorded her deed and went into possession. Afterwards, in 1877, a *scire facias* was issued on the judgment, was duly served on the defendant therein, but not on the *terre tenant*. In 1879 judgment was taken against the defendant in the *scire facias*, and in 1881 an *alias scire facias* was issued and served on the *terre tenant*. She appeared and filed an affidavit of defence, in which she claimed the *alias scire facias* was inoperative to continue the lien of the original judgment against her title, because it was not issued and served for more than five years from the date of her purchase. The court below thought otherwise, and accordingly entered judgment *de terris;* and, on writ of error to this court, the judgment was affirmed in an opinion by our brother GORDON. The reasons given therefor need not be repeated here. They will be found in the opinion referred to and in the cases there cited.

> Judgment reversed and judgment *de terris* is now entered, on the case stated, in favor of plaintiff and against defendants for $2,000 with interest from May 3d, 1880, and costs.